UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZATAUNIA R. JONES, )  )  Plaintiff, )  )  vs. )  )  JOHN E. POTTER, Postmaster General, )  United States Postal Service, )  )  Defendant. ) | 05 C 0858 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant's, John E. Potter, the Postmaster General of the United States Postal Service ("USPS"), Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Motion is granted.

## BACKGROUND

The relevant facts are taken from the parties' filings under Local Rule 56.1 ("L.R.56.1"). As is the practice in this district, we will only consider those facts or additional facts presented in conformity with L.R. 56.1. The alleged facts not properly before us or unsupported by the record have been disregarded. See Brasic v.

Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997) (refusing to consider the plaintiff's additional facts where not supported by specific references to the record).

Plaintiff, Zataunia Jones ("Jones"), began her employment with USPS as a mail handler in the Chicago Bulk Mail Center in August 1994, and, at all relevant times, was assigned to Pay Location 234. Jones had several Postal Supervisors including Toni Dunn-Seaton ("Dunn-Seaton"), Joseph Michael Harris ("Harris"), Quentin Turnbow ("Turnbow"), and William Walker ("Walker"). During her employment, Jones served as an alternate union steward for the Mail Handlers Union, Local 106. As such, Jones was subject to the USPS policy which requires employees absent for more than 21 consecutive days to submit medical documentation to support such an absence and to get medical clearance before returning to work.

The events giving rise to Jones' claims began in 2001, when, over a 2-3 month period, Harris made sexual advances; specifically, requesting hugs and making offensive comments to Jones. On occasion, Jones complied with Harris's request for hugs. Harris responded by feeling her back, smelling her neck and putting his tongue in her ear. Further, Harris's sexual comments also escalated to the point where he asked Jones to engage in oral sex. Jones informed Harris that his advancements were unwarranted and that she would file a grievance if they did not stop. On July 6, 2001, Jones filed an informal EEO discrimination complaint.

Distraught by Harris's actions, Jones submitted a 160-hour Family Medical Leave Act ("FMLA") request because she was "crying hysterically" and was not physically, emotionally, or mentally able to work. However, Jones was not aware of whether she had worked enough hours to qualify for such leave. Turnbow presented Harris with Jones' request who instructed him to "let her ass go." When Jones left work that day, she was "emotionally and psychologically traumatized by the events." Jones met with her doctor at the "first available appointment" and was diagnosed with anxiety neurosis. Jones' doctor prescribed that she work less and "not in the same place." When Jones had not returned to work, Turnbow mailed her a Notice of Unauthorized Absence on July 18, 2001, and when Jones had yet to return by July 25, 2001, Turnbow mailed her a Notice of Removal. The Notice of Removal was rescinded on August 7, 2001. Jones did not return to work until September 25, 2001. The absence was of such a duration that Jones was required to present medical evidence justifying her absence prior to returning to work. Jones never obtained or supplied such evidence and her doctor never actually cleared her to return to work.

Upon Jones' return to work, Harris confronted her and asked whether she had the medical clearance to do so. Harris told Jones to punch out, that he would place her on emergency placement, and to go the Manager of Distribution Operations' ("MDO") office. Harris threatened to call the postal police on Jones to escort her from the

building. Jones was "crying uncontrollably," was "emotional and upset" and experienced a panic attack and tightness in her chest. After the confrontation, Jones was allowed to return to work. On November 8, 2001, Jones contacted the EEOC to file an informal complaint.

Jones alleges that she requested sick leave on or about November 23, 2001, and recalls submitting the request to her supervisor, Debra Fortier. However, when Jones returned from her absence, she was listed as "Absent Without Leave" instead of "Leave Without Pay." In any event, Jones admits that she does not recall being reprimanded as a result and that the situation was eventually rectified.

Jones claims that problems with one of her supervisors, Dunn-Seaton, began when Dunn-Seaton failed to follow the proper procedures in conducting a pre-disciplinary interview with Jones and, consequently, was unable to discipline her. On April 18, 2002, Dunn-Seaton assigned Jones to "work the APC's," which was a job Jones submits required gloves. Jones could not find any gloves in her unit. While waiting for gloves to be provided, Jones was handed a newspaper by a co-worker and looked at the front page. Dunn-Seaton saw Jones looking at the newspaper, asked that Jones stop reading it and instructed Jones "to get on her job." Jones then told Dunn-Seaton "to get on [her] job and have some gloves in the unit so that [Jones] could do

[her] job," and that she did "not know who [Dunn-Seaton was] talking to like that." Jones then began to work the APC's without gloves.

While working the APC's, Jones nearly collided with a forklift operated by another co-worker. Jones, shaken up and frightened by the incident, contacted Dunn-Seaton to report an unsafe work condition, and requested a Form 1767 to do so. Dunn-Seaton declined to file the requested report after Harris informed her that a formal report was unnecessary and that Dunn-Seaton was only required to fix the unsafe condition. Distraught, Jones demanded to see a union steward and the lead MDO on duty. Dunn-Seaton instructed Jones to return to work, but Jones refused. Dunn-Seaton attempted to contact MDO Harris regarding the matter. Jones indicated that she did not want to talk to MDO Harris and left her unit to go to the union room to end her workday.

Prior to leaving work, Walker, the lead MDO on duty, entered the union room and instructed Jones to return to work. Jones refused and attempted to explain the safety issue. Walker requested that the Postal Police be called to the union room. Eventually, Jones' union steward, June Harris, talked Jones into staying and walked her back to her unit. Jones did not get "put out of the building that day," but felt threatened. Jones had a pre-disciplinary meeting regarding the matter that same day and was issued a Letter of Warning, in front of her co-workers, for her failure to follow

instructions and insubordination. Pursuant to USPS policy, a supervisor is "supposed to issue discipline . . . in a confined area [when] there are no other employees around at the time."

On April 24, 2002, Jones requested that Dunn-Seaton allow her to fill out an EEO affidavit during the work day. Dunn-Seaton denied the request because she was unsure whether EEO documents were to be filled out during the work day or, instead, during an employee's personal time. However, Dunn-Seaton informed Jones that she would contact the EEO to find out. On April 28, 2002, Jones filed an informal EEO discrimination complaint.

On June 4, 2002, Dunn-Seaton gave Jones several work assignments at once. Jones notified Dunn-Seaton that she could only do one job at a time. Dunn-Seaton told Jones that she was "going to get [her] ass out of here." Jones experienced a panic attack, tightness in her chest and shoulder, and a severe headache. Jones felt she could not work under those conditions and subsequently filled out a Family and Medical Leave Act ("FMLA") request for four weeks time off from work. However, Jones was unaware that she was ineligible for FMLA leave because she had not worked the required minimum hours. Jones left work that day and did not return.

In response to Jones' absence, Dunn-Seaton scheduled pre-disciplinary hearings with Jones for June 14, 2002, and June 26, 2002, but Jones did not attend either

hearing. Consequently, Dunn-Seaton issued a Notice of Removal on June 28, 2002, which stated that it "has been determined that you are not meeting the requirements of your position as to attendance." The Notice of Removal cited fourteen separate USPS rules, policies, and procedures Jones violated by not reporting to work and properly documenting her absence. Dunn-Seaton issued a second Notice of Removal on August 2, 2002, after Jones again failed to show up for work and did not attend a pre-disciplinary meeting, reiterating the message of the June 28, 2002 Notice of Removal.

Although Jones had yet to submit the medical documentation requested, she saw a doctor regarding her condition on June 11, 2002. The doctor indicated that Jones was unable to work, should not work "until further notice" and estimated her recovery time to be 3-6 months. On August 7, 2002, Jones submitted medical documentation of her condition and, consequently, both Notices of Removal were rescinded. On August 9, 2002, Jones faxed four leave requests covering July 3, 2002 until October 15, 2002, and on October 30, 2002, Jones faxed five leave requests covering October 15, 2002 until March 3, 2003.

On October 22, 2002, Dunn-Seaton sent Jones a letter notifying her that: 1) August 7, 2002, was the last date Jones had submitted medical documentation to justify her absence; 2) updated documentation was needed; and 3) a pre-disciplinary interview had been scheduled for November 13, 2002. Jones refused to provide

additional medical information because the documents and requests for leave previously submitted covered the period in question. Again, Jones did not show up for the pre-disciplinary interview, nor did she call to let Dunn-Seaton know she would be absent. Jones submits that she did not attend the interviews because she "was not mentally able to deal with anything" and "could not handle seeing any of the managers who [she] was having problems with." Jones further maintains that "[she] was not able to come to any pre-d's because [she] was afraid of what may happen to [her and] . . . was afraid of what might happen to Dunn-Seaton as well."

By the end of December 2002, Jones' had not returned to work in over six months. Dunn-Seaton sent Jones two more Notices of Removal on December 24, 2002, one via first class and the other via express mail, which reiterated the messages of the earlier Notices of Removal and indicated that she would be removed in 30 days. Apparently, on December 25, 2002, while Jones was lying in bed, Jones' mail carrier rang her doorbell to deliver the Notices of Removal. Although Jones heard the doorbell ring, she was unable to answer the door in time and the mail carrier was pulling away when she did. The mail carrier left Jones a note on her door, which Jones found, indicating that there was mail for Jones at the post office that could be picked up the following day from her place of employment. Jones "could not believe that

someone would actually send anything to [her] that would be delivered on Christmas day."

Jones never went to the post office to pick up the December 24, 2002, Notice of Removal. Jones did not actually learn that the attempted delivery was a Notice of Removal until February 12, 2003, when she received notification that her medical benefits were being terminated. Jones immediately contacted her union steward to start the grievance process, but did not contact the EEO office to contest her removal until March 27, 2003.

On February 11, 2005, Jones filed the instant action alleging that the Defendant retaliated and discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991. On September 19, 2005, Defendant filed the instant Motion for Summary Judgment on all claims.

## **LEGAL STANDARDS**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505 (1986). In seeking a grant of summary judgment, the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record, we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record-only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

## **DISCUSSION**

As an initial matter, Jones, in her response to Defendant's Motion, attempts to bring a Hostile Work Environment claim despite not alleging such wrongdoing in her

-10-

complaint. "A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996). Relying on Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (complaint may not be amended by brief in opposition to motion to dismiss). Consequently, Jones' attempt to amend her complaint is unavailing. We turn therefore to address Jones' remaining allegations of retaliation and discrimination - both of which Defendant claims are procedurally barred and brought without merit.

## A. **Whether Jones' Claims are Procedurally Barred**

First, Defendant asserts that Jones' claims are procedurally barred because she failed to exhaust her required procedural remedies prior to bringing the instant action. Specifically, Defendant contends that Jones failed to contact the EEOC to contest her removal within the limitations period provided under 29 C.F.R. § 1614.105(a), which states in pertinent part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

Jones maintains that she did not receive actual knowledge of her removal until February 12, 2003, when she was notified that her medical benefits were being terminated. Consequently, Jones submits that the February 12, 2003, letter was the last instance of discrimination and, therefore, her March 27, 2003, contact with the EEOC was within the 45 day limitation period.

Dunn-Seaton sent Jones two Notices of Removal on December 24, 2002, both of which were attempted to be delivered on December 25, 2002. It is undisputed that the notices were attempted to be delivered on December 25, 2002, and that, on the same date, Jones was notified that a parcel from her employer was available for her to pick up at the post office. She never went to the post office to retrieve the Notices of Removal. Although Jones now contends that it was not until February 12, 2003, that she was notified of her termination, it is evident from the record that her own complacency caused her lack of notification. It is well established that where delivery of a notice is unsuccessful, "the receipt date is presumed to be five days from the mailing date." Lloyd v. Sullivan, 882 F.2d 218 (7th Cir. 1989). Consequently, Jones is presumed to have been notified of the Notices of Removal on December 30, 2002.

Furthermore, the December 24, 2002, Notices of Removal indicate that the effective date of Jones' removal was "thirty (30) days from the date of [her] receipt of [the] letter." Consequently, Jones was effectively terminated on January 29, 2003.

Therefore, in order to comply with the 45 day limitations period, Jones needed to contact the EEO to contest her removal by March 17, 2003. However, Jones did not contact the EEO until March 27, 2003, ten days after the limitations period expired. As a result, Jones failed to properly exhaust her administrative remedies prior to filing the instant action and, therefore, her claims are procedurally barred.

## B. Jones Claims on the Merits

Even if Jones' claims were not procedurally barred, her claims fail on the merits. Title VII makes it unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e2(a)(1). In the Seventh Circuit, it is well established that a Title VII plaintiff may show that she was the victim of discrimination in the workplace "by providing direct evidence of discrimination or by proceeding under the indirect, "burden-shifting method" first outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Haywood v. Lucent Techs., Inc., 323 F.3d 524, 529 (7th Cir. 2003).

The direct method allows a trier of fact to find discriminatory conduct without inference or presumption. See Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 783 (7th Cir.2004). The direct method requires the plaintiff to produce

enough evidence, whether direct or circumstantial, Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994), to create a triable issue of whether the adverse employment action had a discriminatory motivation. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir. 1997). Direct evidence is essentially "an admission by the decision maker that [its] actions were based on the prohibited animus." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000). Circumstantial evidence must compose "a convincing mosaic of discrimination against the plaintiff", Troupe, 20 F.3d at 737, and is of three general types: (1) suspicious timing, ambiguous statements, or behavior toward other employees; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext for discrimination. Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot., 344 F.3d 680, 689-90 (7th Cir. 2003).

The indirect method, on the other hand, requires the plaintiff, to first, make out a *prima facie* case of discrimination. Id. If the plaintiff can do so "through competent evidence," the burden of production shifts to the defendant "to offer a permissible, noninvidious reason for the alleged discrimination." Johnson v. Camberidge Indus., Inc., 325 F.3d 892, 897 (2003). If the defendant meets that burden, the plaintiff "may then rebut that evidence by showing that those reasons are a pretext for discrimination

or that the decision was tainted by impermissible . . . motives." Id. The "ultimate burden" of persuading the trier of fact that the employer intentionally discriminated against the plaintiff "remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981). Jones asserts that her claims should survive under either the direct or indirect method; however, it is evident that she has confused the methods bringing her claims. In any event, we will address her claims under both methods.

*1. Jones' Claims Under the Direct Method*

First, to establish a case of retaliation under the direct method, Jones must show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by [her] employer; and (3) a causal connection between the two." Moser v. Ind. Dep't of Corrs., 406 F.3d 895, 903 (7th Cir. 2005) (relying on Sitar v. Ind. Dep't of Transp., 344 F.3d 720, 728 (7th Cir. 2003).) It is evident that the first two elements of the claim exist, given Jones' claims are predicated on her previously filed EEO complaints and her eventual termination. Therefore, the principal issue is whether Jones' EEO complaints caused her termination.

To prove causation, Jones must show that USPS would not have taken the adverse employment action "but for" her protected activity. Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1008 (7th Cir. 2002). Jones contends that she was

discriminated against "without limitation" and presents, in support thereof that: 1) on September 28, 2001 she was questioned about medical clearance; 2) on November 23, 2001, she was denied sick leave; 3) on April 19, 2002, she was issued a letter of warning for failure to follow instructions by not performing duties as assigned, and for insubordination; 4) on April 13, 2002, she was denied FMLA leave; and 5) was issued letters of removal on July 25, 2001, June 28, 2002, and August 2, 2002, which were rescinded. In addition, Jones submits that her supervisors knew of her EEO activity prior to the alleged discriminatory actions, though the exact date of said notice is unclear.

Although Jones clearly establishes a turbulent working relationship with Defendant, she fails to show that those troubles, individually or the aggregate thereof, is proof of Defendant's discriminatory motivation which caused her eventual termination. Jones seems to argue that the suspicious timing of each action in relation to her EEO complaints evidences that those complaints caused not only each individual action but, also, her termination. However, it is evident, as Defendant asserts, that each disciplinary action was issued in close proximity to Jones' misconduct. Consequently, Jones fails to show that her EEO activity led to her eventual termination and, therefore, her retaliation claim fails under the direct method.

Further, in bringing her racial and sexual discrimination claims under the direct method, Jones fails to proffer any admissible direct evidence of USPS's prohibited animus. What Jones does is submit the same evidence relied upon in arguing her retaliation claim, *supra*, as circumstantial evidence to support her discrimination claims. However, as previously discussed, even when considered in a light most favorable to Jones, that evidence woefully fails to create the "convincing mosaic" of discrimination required to satisfy such claims under the direct method. Consequently, we turn to address Jones' claims under the indirect method.

## 2. *Jones' Claims Under the Indirect Method*

Under the indirect method, in order to establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Hilt-Dyson v. City Of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). To establish a *prima facie* case of discrimination resulting from unlawful termination under the indirect method, Jones must show: (1) membership in a protected class; (2) that she was performing her job in a satisfactory manner; (3) that she was subjected to an adverse employment action;

and (4) that similarly situated employees were treated more favorably. Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001). It is evident that Jones is a member of protected classes and suffered an adverse employment action. Therefore, we are left to address whether Jones has established that she was meeting USPS's legitimate expectations and whether similarly situated employees, not members of her protected class, were treated more favorably.

First, Defendant contends that, because of Jones' prolonged unexplained absences, she fails to satisfy her burden of proving that she met its legitimate expectations. The undisputed facts indicate that Jones began her prolonged absence from work due to an alleged medical condition. Based on USPS's absentee policy, it is evident that at the time of Jones' termination, USPS's legitimate expectation was that employees were to attend work and, when necessary, would follow the proper procedures when requesting prolonged time off and submit the appropriate medical information when asked. It is undisputed that Jones knew of these policies yet failed to comply prior to being terminated. Consequently, Jones fails to satisfy her burden of proving that she was meeting USPS's legitimate expectations.

Next, Jones has also failed to meet her burden of showing that Defendant treated similarly situated employees more favorably. In determining whether a certain employee is similarly situated to other employees, the court should consider whether

the employees possess analogous attributes, experience, education, and qualifications and are in materially parallel positions. Radue, 219 F.3d at 617-18. A plaintiff need not show "complete identity," only substantial similarity. Id. at 618. Jones has failed to set forth a single employee, let alone a similarly situated one, that was treated more favorably by USPS than she was. Without submitting such, both her retaliation and discrimination claims fail under the indirect method. Consequently, we find it unnecessary to address USPS's proffered reason for Jones' termination or whether that reason is really pretext for discrimination. Therefore, even if Jones' claims were not procedurally barred, summary judgment would be appropriate because no genuine issues of material fact exist, and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted.

_Charles P. Kocoras_

Charles P. Kocoras
Chief Judge
United States District Court

Dated:   March 29, 2006